IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH SMITH, | : | No. 4:06-CV-2206 |
| Plaintiff, | : | |
| | : | (Judge Jones III) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE,[1] | : | |
| Commissioner of Social Security, | : | |
| Defendant | : | |

## **MEMORANDUM**

February 4, 2008

Before the Court is the report and recommendation of Magistrate Judge Thomas M. Blewitt entered on November 13, 2007, which recommends that Plaintiff Joseph Smith's appeal of the Commissioner's denial of Social Security Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act be denied. (Doc. 10.) Smith filed objections to the report and recommendation (Doc. 11), to which the Commissioner filed a response (Doc. 12). For the reasons set forth below, the Court will adopt the report and recommendation and deny Smith's appeal.

**I.    STANDARDS OF REVIEW**

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, succeeding Linda S. McMahon. Pursuant to Federal Rule of Civil Procedure 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

### A.     Review of a Magistrate Judge's Report

In reviewing the report and recommendation of a magistrate judge, the district court makes a de novo determination with respect to those portions to which objection is made.  28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980); *see also* Local Rule 72.3.  In providing for a de novo determination rather than a de novo hearing, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations without the need to rehear testimony.  *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984.)

### B.     Review of the Commissioner's Denial of Benefits

A district court's review of the denial of disability benefits, however, is more limited.  The court's role is to "determine whether there is substantial evidence to support the Commissioner's decision." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing *Pierce v. Underwood*, 487 U.S. 552 (1988)).  "It is less than a

preponderance of the evidence but more than a mere scintilla." *Jones*, 364 F.3d at 503 (quoting *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995)). "Overall, the substantial evidence standard is a deferential standard of review." *Id.* (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

### C. Eligibility Evaluation Process

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A.) Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). A five-step evaluation process is used to determine if a claimant meets these eligibility requirements. 20 C.F.R. § 404.1520; *see Jones*, 364 F.3d at 503. If the Commissioner finds that a claimant is not disabled at any step in the process, the review does not proceed, and the claimant is not eligible for benefits. 20 C.F.R. § 404.1520(a)(4).

At step one, the claimant must establish that he has not engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is working and the work is substantial gainful activity, he will found to be not disabled regardless of medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b). At step two, the claimant must establish that he has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have any impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities, he is not disabled. 20 C.F.R. § 404.1520(c).

If the claimant does suffer from a severe impairment, at step three, the Commissioner must determine whether the evidence establishes that the claimant's impairment meets or equals those severe impairments listed in Appendix 1, Subpart P, Regulations No. 4. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically eligible for benefits. 20 C.F.R. § 404.1520(d.) On the other hand,

if the claimant does not suffer from a listed impairment or its equivalent, the Commissioner proceeds to step four and determines whether the claimant retains the "residual functional capacity" to perform his past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If so, the claimant is not eligible for disability benefits.  20 C.F.R. §§ 404.1520(e)-(f.)

The claimant bears the burden of demonstrating an inability to return to his past relevant work.  *Plummer*, 186 F.3d at 428.  If the claimant meets this burden, the evaluation continues to step five, where the burden then shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the claimant is able to perform, consistent with his medically determinable impairments, functional limitations, age, education, work experience, and vocational factors.  20 C.F.R. § 404.1520(a)(4)(v); *Plummer*, 186 F.3d at 428.  If the Commissioner demonstrates that the claimant can make an adjustment to any other work, the claimant is ineligible for benefits.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

## II.     BACKGROUND

### A.     Factual Background

Magistrate Judge Blewitt's report and recommendation amply sets forth the factual background of this case as derived from the certified record of the proceedings. The Court will only briefly summarize that background here, and unless otherwise noted, all facts are derived from the report and recommendation.

#### 1.     Personal History

Smith generally alleges that he is disabled due to severe back pain caused by herniated discs and other conditions. Smith was 41 years old at the alleged onset of his disability on May 5, 2004. He has not worked since that date. Smith has a high school education and last worked as a landscaper. Prior to that, he worked as a helper for a plumber and electrician and as a general laborer at a box frame company.

Smith lives alone and does most of his own housework and limited cooking. He drives about fifty miles a week and walks in fields for exercise. Smith is able to bathe himself with caution, but has difficulty putting on socks and shoes or picking up his feet. The heaviest object he lifted in the thirty days prior to his hearing before the ALJ was a bag of groceries weighing under ten pounds. His mother helps with his laundry. Smith spends about an hour a day watching

television. He sleeps only about three consecutive hours per night, but remains in bed. Smith also naps during the day to alleviate pain and rejuvenate himself. With naps, Smith sleeps nine to ten hours per day.

Smith states that he suffers back pain that radiates down his leg and foot after sitting, standing, and walking. His back pain is chronic, occurring twenty-four hours a day. Smith has increased pain during and after any activity, which improves after rest. Use of his upper extremities for prolonged periods causes Smith numbness, pain in his shoulders, and headaches. Smith also experiences nausea from his pain. Smith states that he has good days when he is able to move around reasonably, but that if he does so for two or three days in a row, his pain worsens.

### 2. Medical History

#### a. Dr. Janerich

Smith began treating with Albert D. Janerich, M.D. in September 2004. On September 8, 2004, Smith treated with Dr. Janerich for neck and shoulder pain. Dr. Janerich noted that Smith had previously undergone an MRI which revealed a herniated disc and possible fracture, although Smith did not receive treatment.

After examining Smith, Dr. Janerich opined that Smith suffers from discogenic[2] disease with herniations[3] in the neck and lower back and likely radiculopathy[4]. Dr. Janerich recommended outpatient physical therapy, EMG[5] and nerve conduction studies of the upper extremities, and a follow-up evaluation. Dr. Janerich did not recommend surgery or any medications. Based on his examination, review of the medical records, the clinical history, and the MRI, Dr. Janerich completed an Employability Assessment Form and concluded that Smith was temporarily disabled due to a herniated disc as of September 8, 2004 and that this disability was expected to last until September 8, 2005. On September 23, 2004, Smith underwent an EMG of his upper extremities which revealed no evidence of cervical radiculopathy or peripheral neuropathy[6].

---

[2] Discogenic denotes " disorder originating in or from an intervertebral disk." Stedman's Medical Dictionary (27th ed. 2000).

[3] A disk herniation is the "extension of disk material beyond the posterior annulus fibrosus and posterior longitudinal ligament and into the spinal canal." Stedman's Medical Dictionary (27th ed. 2000).

[4] Radiculopathy is "a disorder of the spinal nerve roots." Stedman's Medical Dictionary (27th ed. 2000).

[5] EMG or electromyogram is "a graphic representation of the electric currents associated with muscular action." Electromyography can also refer to "the entire electrodiagnostic study performed in the EMG laboratory, including not only the needle electrode examination, but also the nerve conduction studies." Stedman's Medical Dictionary (27th ed. 2000).

[6] Neuropathy is "a disease involving the cranial nerves or the peripheral or autonomic nervous system." Stedman's Medical Dictionary (27th ed. 2000).

On October 13, 2004, Smith was reevaluated by Dr. Janerich due to left leg pain. Smith reported that the outpatient physical therapy was not helpful. Dr. Janerich noted that Smith underwent a neurosurgical evaluation with a Dr. Wolfson, who recommended surgery, but that Smith also treated with a Dr. Presper, who did not recommend surgery. Upon examination, Smith alternated between sitting and standing independently, with slow and guarded movements. Smith had decreased range of motion of the cervical spine and tenderness in the left trapezius and shoulder, but good range of motion in the left shoulder, minimal tenderness over the bicipital groove, and no redness or warmth. Dr. Janerich concluded that Smith's shoulder and arm pain were related to his cervical disc disease. Dr. Janerich warned Smith of the dangers of continuing to smoke relative to his conditions, recommended continued outpatient physical therapy, Zanaflex for muscle spams, Mobic[7], and a follow-up visit.

On December 27, 2004, Smith treated again with Dr. Janerich who noted that an MRI revealed a disc herniation in the neck and lumbar spine. Dr. Janerich recommended no work, Vicodin, Tylenol, and a reevaluation in three months. Smith was reevaluated by Mark Lacey, PA-C at Dr. Janerich's office on March 5,

---

[7] Mobic or meloxicam "is a nonsteroidal anti-inflammatory drug (NSAID) that exhibits anti-inflammatory, analgesic, and antipyretic activities" Physicians' Desk Reference (2006).

2005.  He reported good days and bad days, but was generally comfortable.  Smith took Vicodin only as a last resort for severe pain and stopped taking Mobic.  Dr. Janerich recommended a follow-up visit.  On August 16, 2005, Smith was treated by Elaine Lacey, PA-C at Dr. Janerich's office.  His condition was not significantly changed.  Smith reported he had been doing a lot of physical labor at home, but was not working.  Upon examination, Smith alternated between sitting and standing independently and ambulated independently without assistance.  His pain was worsened because of his increased activity at home, however, Dr. Janerich refused to refill Smith's Vicodin more often because Smith chose to perform excessive physical activity.  Smith treated again with Dr. Janerich on May 1, 2006, and Dr. Janerich reported no major changes.

Smith underwent an EMG of his upper extremities on May 23, 2006, which revealed a left sided cervical radiculopathy and an EMG of his lower extremities on June 5, 2006, which revealed a lift radiculopathy.  An MRI on August 26, 2006, MRI revealed interval worsening in degenerative disc disease for the lower lumbar spine; disc herniation, interval improvement in the left lateral component of the herniated disc, that central disc herniation remained the same; and mild bulging of a disc.

### b. Dr. Campbell

The Commissioner arranged for Smith to undergo a consultative examination with Dwin Campbell, D.O. on August 2, 2004. After taking a history and conducting a physical examination, Dr. Campbell diagnosed disc herniations, spondylosis[8], degenerative disc disease, and a lateral disc extrusion. Dr. Campbell noted that Smith had attempted to return to work on several occasions, but that his condition worsened after each attempt. Dr. Campbell stated that Smith faithfully follows his home exercise program which results in a stable range of motion and muscle strength. However, Dr. Campbell noted that Smith's prognosis for disc disease was poor and that his only hope for improvement was surgery, the results of which are questionable.

On July 29, 2004, Dr. Campbell completed a Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities. Dr. Campbell found that Smith could (i) frequently lift and/or carry two to three pounds; (ii) occasionally lift and/or carry ten pounds; (iii) stand and/or walk up to one to two hours in an eight-hour workday; (iv) sit for four hours in an eight-hour workday;

---

[8] Spondylosis is the "ankylosis of the vertebra; often applied nonspecifically to any lesion of the spine of a degenerative nature." Ankylosis is the "stiffening or fixation of a joint as the result of a disease process, with fibrous or bony union across the joint." Stedman's Medical Dictionary (27th ed. 2000).

(v) push and pull unlimitedly; and (vi) could never bend, kneel, stoop, crouch, balance or climb. Dr. Campbell found no environmental limitations.

### 3. Dr. Ryczak

Mary Ryczak, M.D., completed a Residual Functional Capacity Assessment on August 16, 2004. Dr. Ryczak diagnosed disc herniations, spondylosis and degenerative disc disease. She found that Plaintiff could (i) occasionally lift and/ or carry ten pounds; (ii) frequently lift and/ or carry less than ten pounds; (iii) stand and/or walk (with normal breaks) at least two hours in an eight-hour workday; (iv) sit (with normal breaks) about six hours in an eight-hour workday; (v) was limited in pushing and/or pulling with the lower extremities; (vi) and could occasionally climb, balance, stoop, kneel, crouch and crawl. Dr. Ryczak found no manipulative, visual, communicative, or environmental limitations.

### B. Procedural Background

Smith filed an application for benefits on June 10, 2004. The state agency initially denied his claim. Smith filed a timely request for a hearing, which was held before the ALJ on May 17, 2006. At the hearing, Smith testified and was represented by counsel.

A vocational expert ("VE") Gerald Keating also testified at the hearing. The VE classified Smith's past work as an plumber/electrician helper as semi-skilled

work in the medium duty exertional level and his past work as a general laborer as semi-skilled work in the heavy duty exertional level.  When asked to consider Smith's background with the ability to occasionally lift and carry ten pounds, frequently lift and carry five pounds; stand and walk two hours per day, sit for six hours per day, alternating between sitting and standing; could never climb, crawl, push or pull; could occasionally balance, stoop, kneel, crouch, do fine manipulations, and reach above shoulder level; and should avoid excessive vibrations and hazards, such as unprotected heights, the VE testified that Smith would not be able to perform any of his past relevant work but could perform other work in the Northeast Pennsylvania regional economy.  The VE identified such jobs as a general cashier with 1,600 to 1,700 jobs available in the regional economy; an assembler with 1,500 to 1,700 jobs available in the regional economy; a packager with 1,100 to 1,200 jobs available in the regional economy; and a surveillance system monitor with 100 to 200 jobs available in the regional economy.  When asked to consider an individual with the RFC for sedentary work, who could never bend, kneel, stoop, crouch, balance or climb, the VE testified that such an individual would not be able to perform any work in the local, state or national economy.

Smith was denied benefits pursuant to the ALJ's decision of June 28, 2006. The ALJ took notice of Smith's prior application for benefits, filed on January 31, 2003, which alleged disability since December 6, 2002. That application was denied initially and, after a hearing, denied by an unfavorable decision on May 4, 2004, which was not appealed.

In regard to the five-step evaluation process, the ALJ found that Smith had not engaged in substantial gainful work activity and that Smith's back disorders are severe impairments, but not severe enough to equal a listed impairment. At step four, the ALJ found that Smith could not perform his past relevant work. At step five, the ALJ found that Smith retained the RFC to perform a limited range of sedentary work and that such work existed in the national economy in significant numbers. The ALJ thus found that Smith was not entitled to benefits. Smith's request for review of the ALJ's decision was denied by the Appeals Council, and Smith appealed to this Court.

### C.     The Report and Recommendation

In his brief before Magistrate Judge Blewitt, Smith argued that the ALJ's decision was not based on substantial evidence in that the ALJ ignored medical evidence in determining his RFC. Smith alleged that, in reaching the conclusion regarding his RFC, the ALJ improperly rejected the opinions of his physicians,

specifically Dr. Janerich's conclusion that he was disabled and should not return to work and Dr. Campbell's poor prognosis for improvement in his condition.

In response, the Commissioner argued that the RFC was supported by medical evidence such as the fact that Smith retained normal muscle strength and sensation and Smith's conservative treatment history of outpatient physical therapy and infrequent use of pain medication.  The Commissioner further argued that the ALJ's decision was supported by evidence of Smith's activity level, for example the fact that he engaged in physical labor around his home.

Magistrate Judge Blewitt concluded that the ALJ's decision was supported by substantial evidence.  The report and recommendation finds that the ALJ was not bound by Dr. Janerich's conclusion that Smith was "disabled" for purposes of state welfare benefits, and that the ALJ permissibly determined that this conclusion, made at an initial visit, was not supported by medical evidence.  The report and recommendation also finds that the ALJ determined Dr. Campbell's RFC was contradicted by Smith's conservative treatment, his level of activity, objective medical evidence, and the opinion of Dr. Ryczak.  Magistrate Judge Blewitt concluded that this evidence supported the ALJ's determination of Smith's RFC.

## III.   DISCUSSION

In his objections to the report and recommendation, Smith makes essentially the same argument that he did before Magistrate Judge Blewitt: that the ALJ improperly rejected the opinions of Dr. Janerich and Dr. Campbell in determining Smith's RFC.

The ALJ determined that Smith has the RFC to lift and carry ten pounds occasionally and five pounds frequently; stand for two hours, walk for two hours, and sit for six hours in an eight-hour workday; never climb, crawl, or push/pull; and occasionally balance, stoop, kneel, and crouch.  The ALJ further found that Smith should be allowed a sit-stand option to minimize pain and stiffness and should avoid hazards and vibrations.  The Court cannot say that these findings are unsupported by substantial evidence.  In determining a claimant's RFC, the ALJ must consider all the medical and non-medical evidence, weigh the credibility of the evidence, and explain his conclusions, including the reasons for rejecting certain evidence.  *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001); *Burnett v. Comm'r*, 220 F.3d 112, 122 (3d Cir. 2000).  The ALJ did so here.

The ALJ concluded that, while Smith's impairments could be expected to produce the alleged symptoms, the evidence does not support Smith's statement's that his impairments completely preclude any work activity.  The ALJ based this

conclusion on evidence indicating that Smith retains normal muscle strength, gait, and station and that his memory and judgment are unimpaired. Further, ALJ pointed to Smith's activities as evidence that his claims of complete disability are not entirely credible. Evidence indicates that Smith performs most of his own self-care activities, is able to care for children, is able to drive, and engaged in physical labor at home. An ALJ's credibility determinations are entitled to great deference. *See, e.g.*, *Atlantic Limousine, Inc. v. NLRB*, 243 F.3d 711, 718 (3d Cir. 2001); *NLRB v. Lee Hotel Corp.*, 13 F.3d 1347, 1351 (3d Cir. 1994). The relevant evidence relied on by the ALJ is more than adequate to reasonably support his credibility determination in this case and his conclusion regarding Smith's RFC.

    The Court must also reject Smith's argument that the ALJ failed to give proper weight to the opinions of Dr. Janerich and Dr. Campbell. The ALJ considered Dr. Janerich's September 8, 2004 conclusion that Smith was disabled and rejected it based on medical evidence and Smith's self-reported activity level. The ALJ pointed to contradictions contained within Dr. Janerich's September 8, 2004 notes. Although he concluded that Smith was disabled, Dr. Janerich also stated that Smith was not on any medication and did not recommend any medication or surgery. Dr. Janerich opined that Smith had a radiculopathy, but EMG testing conducted shortly thereafter indicated no such condition. Dr.

17

Janerich later found that Smith's condition had somewhat improved, stated that Smith reported good and bad days, and noted that Smith appeared comfortable while sitting. Finally, the ALJ noted that when Smith reported increased symptoms to Dr. Janerich, it was after he had been doing excessively increased physical labor at home.

While doctors are free to express their opinions regarding a claimant's disability, an ALJ is not required to accept such a conclusion because the determination whether a claimant is disabled "is an ultimate issue reserved to the Commissioner in the first instance (and later the reviewing panels)." *Smith v. Comm'r of Social Sec.*, 178 Fed. Appx. 106, 112 (3d Cir. 2006). (citing 20 C.F.R. § 404.1527(e).) Although a treating physician's opinions are entitled to great weight when they reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time, an ALJ may reject a treating physician's opinion on the basis of contradictory medical evidence, and may afford a treating physician's opinion more or less weight depending upon the extent of supporting evidence. *Plummer*, 186 F.3d at 429 (citations omitted). In this case, Dr. Janerich's conclusion that Smith was disabled was based on an initial consultation. The ALJ pointed to medical evidence, from both at the September 2004 treatment session and later treatment, that contradicted Dr. Janerich's

conclusion, and also gave his opinion less weight based on contradictory evidence of Smith's activity level.  The Court would also add that check-box disability forms, such as the one in which Dr. Janerich concluded that Smith was disabled, are weak evidence at best.  *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").  The ALJ did not impermissibly reject Dr. Janerich's ultimate conclusion that Smith was disabled.

The ALJ also permissibly rejected Dr. Campbell's opinion that Smith could perform less than sedentary work for similar reasons.  The ALJ found that "[t]he degree of impairment suggested by Dr. Campbell is not supported by her own physical examination of the claimant, by objective testing, or by the remainder of the record, but is essentially based on the claimant's subjective complaints."  While Dr. Campbell's prognosis for Smith's improvement was poor, she also indicated that Smith's home exercise routine had prevented any muscle atrophy or loss of range of motion, that Smith ambulates without problem or assistance, that Smith had full sensation in all his extremities, and that his mental health, memory, and judgment were fully intact.  As the ALJ indicated, Dr. Campbell's statement's regarding Smith's ability to sit, stand, and walk were based not on these results of her physical examination, but solely on Smith's self-reported symptoms.  As

19

discussed above, the ALJ properly concluded that Smith's subjective complaints were not entirely credible, in that the medical evidence and his daily activities indicate he is not as severely impaired as he suggests. Further, Dr. Campbell's conclusion that Smith's attempts to return to work worsened his condition is fully consistent with the ALJ's conclusion that Smith cannot return to his past relevant work. This conclusion, however, does not mean that Smith cannot perform sedentary work requiring less exertion. The ALJ identified substantial evidence that supports his conclusion regarding Smith's RFC and explained the reasons for rejecting contrary opinions. The Court, therefore, can find no reversible error.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall adopt the Report and Recommendation of Magistrate Judge Blewitt in its entirety and deny Smith's appeal. An appropriate Order shall issue.